

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,  )
                               )    Case No. 00-6210-CR-HURLEY
                               )
        Plaintiff,             )    Magistrate Judge Vitunac
vs.                                )
                               )
**CINDY K. DEFRIES**            )
                               )
        Defendant.          )
_____/

## DEFENDANT'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF LEGAL OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT

Defendant, **Cindy K. DeFries,** through counsel, having filed general objections to the Pre-Sentence Investigation Report on or about March 14, 2001, hereby submits the following memorandum of law in support thereof:

**A.**     **Specific Offense Characteristic (§2B1.1(b)(1)(H))**

The primary issue pertaining to Defendant DeFries' legal objection to the application of the specific offense characteristic is whether, for sentencing purposes for a conviction under the Child Support Recovery Act ("CSRA"), 18 U.S.C. § 228(a)(3), the Court should take into account a specific offense characteristic. And, if so, whether there is a legal standard to calculate the amount of "loss," where there is no special interrogatory verdict, and where the Indictment does not specific a specific

amount of loss. Further, the question becomes more complicated by determining the time period for the amount of loss. This issue is legally significant as the Government seeks to add seven levels to the Offense Level Computation, resulting in a guideline sentence of imprisonment. PSI, ¶ 27.[1]

1.    *Does the Specific Offense Characteristic Apply to CSRA claims?*

The Eleventh Circuit has  recognized that because "fraudulent" schemes come in various forms, a district court should seriously consider the nature of the scheme in determining what method is to be used to calculate harm caused or intended. *U.S. v. Orton*, 73 F.3d 331 (11th Cir. 1996). This case, unlike most fraudulent schemes, does not involve active concealment or misrepresentations. When determining an amount of loss, the Court should look to both the harm to the victim and the gain to the defendant. In this case, there was absolutely no victim input at trial, and none to date in the sentencing process. Further, there is doubt as to whether amount of loss should apply to a crime, such as the felony provisions of the CSRA, that, for all purposes, is not a federal crime until a certain dollar amount threshhold is met. While Defendant agrees that loss need not be determined with precision, Defendant also argues that, given the nature of the escalating value of child support payments, including legal set-offs (under Florida law) for summers where Defendant had visitation with her daughter (such as the summers of 1993 through 1998), and other time periods where Defendant had custody of her daughter (such as September 1994-December 1994), the amount of loss cannot be calculated without a large amount of speculation. *See U.S. v. Say*, 923 F.Supp. 611 (7th Cir. 1994) (intended loss, if based mostly on speculation, then reverts to minimum loss calculation). Defendant, at this point, however, has not found any case construing sentencing factors for CSRA cases.

---

[1]    § 2B1.1(b)(1)(H) pertains to actual or intended losses between $40,000 and $70,000.

2

Finally, Defendant notes that certain types of crime simply should not have a loss factor applied. For example, the notes suggest that "theft from the person of another, such as pickpocketing . . . receives an enhanced sentence because of the increased risk of physical injury... This guideline does not include an enhancement for thefts from persons by means of force or fear . . . such crimes are robberies." Thus, the note implicitly suggests that an enhancement would not apply to a crime that is not typically a crime that involves typical loss. Hence, Defendant argues that given the unique nature of the CSRA offense, and the fact that it already has a jurisdiction threshhold limit for the amount of underpaid child support payments, any enhancement for amount of loss would be improper double counting.

2.    *What is the Amount of Loss and for What Time Frame?*

Assuming there is no double counting, there is still no dispute that Count II of the Indictment alleges that beginning in *or about July 1998 and continuing through August, 1999*, the Defendant willfully failed to pay support obligations that remain unpaid for greater than two (2) years and was greater than $10,000.00. Defendant argues that the relevant time frame to determine actual loss, if such a factor even applies in this case, would be August 1999. However, as Exhibits A-1 and A-2 indicate, there were payments made to off set the loss during those time periods.

The loss calculation is even more complicated as the amount of loss gradually increases, pursuant to the underlying child support order, as Defendant continues not to make payments (or make only partial payments). Thus, it would be patently unfair to allow the amount of loss to continue blossoming beyond the time frame alleged in the Indictment.[2]

---

[2] To hold otherwise would give a defendant a way to circumvent the law. For example, had Defendant paid off all past obligations in the year 2000, she would then be able to argue that,

**B.    Adjustment for Minimal Planning (§ 2B1.1(b)(4)(A))**

The Government has sought to adjust for Defendant's alleged conduct that is considered "more than minimal planning." The initial inquiry is whether such an adjustment should ever apply in a non-fraud case, such as CSRA cases. Second, Defendant argues that the facts of her case do not warrant such an enhancement.

The notes to USSG 2B1.1(b)(4)(A) state that the guidelines provide an enhancement for more than minimal planning, which includes most offense behavior involving affirmative acts on multiple occasions. The notes indicate that planning and repeated acts are indicative of an intention and potential to do considerable harm. In *U.S. v. Harrison*, 42 F.3d 427 (7th Cir. 1994), the Seventh Circuit noted that such an enhancement applies where there is more planning than "is typical for commission of the offense in simple form" and where there are steps taken to conceal the offense. In this case, there are no facts indicative of planning, or even repeated affirmative acts. Rather, it is a series of omissions which constitute the gist of the charge against Defendant; that is, Defendant failed to make payments periodically between July 1998 and August 1999. However, there is also evidence that Defendant did make substantial payments during that time period, as well into years 2000 and 2001. *See Exhibits A-1 and A-2, attached hereto.* Hence, the enhancement should not apply given the facts of this case.

Indeed, enhancement of a base level offense for use of "more than minimal planning" usually applies to sophisticated crimes or offenses requiring repeated acts over a period of time. *U.S. v.*

---

for purposes of sentencing, there was no loss because all support payments were eventually made, and thus the loss was "0". Under *Aprendi*, Defendant argues that the time frame must be listed specifically in the Indictment and must be definite for sentencing purposes.

*Cropper*, 42 F.3d 744 (2nd Cir. 1994). There is nothing sophisticated in this case, and although there are repeated acts over times, those acts were omissions rather than affirmative, fraudulent acts. Thus, this enhancement is intended to distinguish relatively simple crimes from more sophisticated ones; more than minimal planning exists if affirmative steps were taken to conceal an offense. *U.S. v. Wong*, 3 F.3d 667 (3d Cir. 1993). Indeed, district courts should determine whether particular acts are done with advance planning, or are concealed. *U.S. v. Maciaga*, 965 F.2d 404 (7th Cir. 1992). No evidence of concealment or advance planning was presented at the trial in this cause.[3] Although Defendant did not testify, there was no Government evidence of concealment of funds, and the like. Rather, it was the Government's theory that Defendant should have changed her lifestyle and borrowed money to make the child support payments. Such errors or omissions, as a matter of law, should not rise to the level of advance planning or concealment. Thus, the guidelines calculation should be reduced by 2 levels. ¶ 27 of the PSI.

## C.    Factors Warranting a Departure Pursuant to Either § 5K1.1 or § 5K2.0

Before a departure is permitted, certain aspects of a case must be found unusual enough for it to fall outside the heartland of cases in the Sentencing Guidelines. *Koon v. United States*, 518 U.S. 81 (1996). Because Defendant exercised her right not to testify at trial, Defendant is prepared to present testimony as to why this particular case falls outside the heartland of cases involving failure to pay child support. In particular, Defendant will testify that she has been forever scarred by the

---

[3] Although the Government attempted to try to show that Ms. DeFries had not filed federal tax returns for certain years, in fact she had no obligation to file such returns for years 1994 through 1996 because he income was less than $6,000 per year. However, since that time, upon advice of counsel, Defendant has filed returns from 1996 through 1999, which indicate minimal amounts of income (less than $1,000 per year) for years 1997 through 1999.

5

emotional trauma of living with an abusive spouse, Michael Defries. Defendant's medical records from Imperial Point Medical Center (under the assumed name of Cindy Dardeen, for protective purposes) indicate that on or about March 10, 1984, she was diagnosed with head trauma, along with a hemorrhage in her left lobe, and lacerations above her right eye. *See Composite Exhibit B.* Defendant was unconscious for several days prior to admission to the hospital, and was hospitalized for six (6) days. The medical opinion at the time was that Defendant suffered from physical abuse during her last trimester of her pregnancy. At the time, Defendant was "evasive when questioned regarding the whereabouts of boyfriend, Michael DeFries." and the medical reports indicated that he injuries "appear to have [been] inflicted by a hand, a ring, e.g. physical force." Defendant will provide testimony regarding her abuse, and fear of her former husband, and how this led to subsequent problems in trying to make child support payments in ensuing years.

Defendant will also show that she has made good faith efforts, over the years, to meet child support obligations.

In considering whether this case falls outside the "heartland of cases," this Court should first look to the purpose of the CSRA. Indeed, the U.S. Attorney's Office **Criminal Resource Manual 1954, states as follows:**

"As a general principle, it is recommended that cases should be accepted only when the referral makes clear that all reasonably available remedies have been exhausted. Where is can be concluded based upon the obligor's past conduct that further efforts, while technically viable, would probably prove futile, the case should still be given consideration for referral. Among such cases, priority should be given to cases in which the following is established:

A.    A pattern of flight from State to State to avoid payment or flight after service of process for

contempt or contempt hearing;

B.      A pattern of deception to avoid payment such as changing employment, concealing assets or location, or using false social security numbers;

C.      Failure to make support payments after being held in contempt;

D.      There exist particular circumstances which dictate the need for immediate federal intervention, such as where the custodial parent and/or child have special medical needs which are going unmet, where the custodial parent and/or child is handicapped, or where the custodial family is in danger of eviction and homelessness; or

E.      When the failure to make child support payments has a nexus to other potential Federal charges, such as bankruptcy fraud (i.e. concealing assets), bank fraud (i.e. false statements to a bank), Federal income tax charges (i.e. false statements or tax evasion) or other related criminal conduct. Further, the Manual suggests that "[p]riority should also be given to those cases where the children of the non-paying parent are still minors. While there is no policy prohibiting the filing of charges in "arrears only" cases where there is a chargeable period of non-payment post-enactment of the CSRA, the policy of identifying cases which are the most egregious encompasses the notion that the need to support minor children, while they are minors, is of greater importance."

Thus, the emphasis in child support cases is the status of the victim, Defendant's non-custodial daughter. In this case, the Government has failed to offer any evidence whatsoever regarding the status of the non-custodial daughter. Thus, the inquiry should instead focus on the background of the Defendant to determine what set of circumstances could have led to the failure to may child support payments.

Finally, Defendant is aware that this Court is concerned with her ability to restructure her life

7

after the conviction. However, Defendant will testify that she has made good faith efforts to find work in Indiana, but that her conviction was widely publicized and spread throughout her community, thereby making it difficult to find work in an already tight market. *See Exhibit C* (newspaper articles on case). Defendant is seeking the help of family to find permanent work that will ultimately help her catch up on support payments.

In addition, defendant has also sought help to modify her child support order, but no help whatsoever was forthcoming from the State of Indiana, until on or about March 17, 2001, when the Brown County Prosecutor's Office sent her a letter advising her of the right to request a review of a child support order. *See Exhibit D*. Therefore, Defendant now is able to resolve the support discrepancy.

Accordingly, Defendant respectfully requests that this Court take a long and hard look at the circumstances, and determine that a downward departure is appropriate given the nature of the offense, the background of Defendant, the ultimate goal being re-payment of child support obligations.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished to: Bruce O. Brown, Esq., Assistant United States Attorney, 500 Australian Avenue South, Suite 400, West Palm Beach, FL 33401, and Sheila Tierney, United States Probation, 501 South Flagler Drive, Room 400, West Palm Beach, FL 33401, by U.S. Mail / hand-delivery / facsimile, on this 23 day of March, 2001.

Respectfully submitted,

_____
VALENTIN RODRIGUEZ, ESQ.
Valentin Rodriguez, P.A.
318 Ninth Street
West Palm Beach, FL 33401
(561) 832-7510
Fla Bar No. 047661

Counsel for Defendant (local counsel)



# Department of Revenue
## Child Support Enforcement Program
## Delinquency/Arrears Worksheet
### (NCP Refunds)

Date _____08/23/1999_____

| | | | |
|---|---|---|---|
| NCP: | **Defries, Cindy** | SSN: | **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** |
| CP: | **Defries, Michael** | SSN: | **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** |

| | | | |
|---|---|---|---|
| Analyst: | M. Dominguez | Supervisor: | M. Regan |
| Ordered | 03/08/1993 | Effective | 02/19/1993 |
| | | Emanc. | 07/05/2002 |

Arrears: $  -  As of _____

Arrears: $  -  As of _____

Rate and amount of Current Support Payments:  **$ 125.00**  per  **week**

Last Payment Made  **08/04/1998**  Next Payment Due:  **08/27/1999**

Last Assessment  08/20/1999

| Year | #Pymnts | X | Obligaton | = | C.S. Due | | Year | Total Paid |
|---|---|---|---|---|---|---|---|---|
| 1993 | 46 X | $ | 125.00 | = | $ 5,750.00 | | 1993 | $ 288.03 |
| 1994 | 52 X | $ | 125.00 | = | $ 6,500.00 | | 1994 | $ 749.02 |
| 1995 | 52 X | $ | 125.00 | = | $ 6,500.00 | | 1995 | $ 752.36 |
| 1996 | 52 X | $ | 125.00 | = | $ 6,500.00 | | 1996 | $ 4,232.58 |
| 1997 | 52 X | $ | 125.00 | = | $ 6,500.00 | | 1997 | $ 548.45 |
| 1998 | 52 X | $ | 125.00 | = | $ 6,500.00 | | 1998 | $ 1,107.29 |
| 1999 | 34 X | $ | 125.00 | = | $ 4,250.00 | | 1999 | |
| 2000 | 0 X | $ | 125.00 | = | $ - | | 2000 | |
| 2001 | 0 X | $ | 125.00 | = | $ - | | 2001 | |
| 2002 | 0 X | $ | 125.00 | = | $ - | | 2002 | |
| 2003 | 0 X | $ | 125.00 | = | $ - | | 2003 | |
| 2004 | 0 X | $ | 125.00 | = | $ - | | 2004 | |
| 2005 | 0 X | $ | 125.00 | = | $ - | | 2005 | |
| 2006 | 0 X | $ | 125.00 | = | $ - | | 2006 | |
| 2007 | 0 X | $ | 125.00 | = | $ - | | 2007 | |

| | | | |
|---|---|---|---|
| C.S. Due = | $ 42,500.00 | Total | $ 7,677.73 |
| Previous Arrears = | $ | Direct | |
| Amount Due = | $ 42,500.00 | Total Cred | $ 7,677.73 |
| Minus Total Credit = | $ 7,677.73 | | |
| Actual Arrears = | $ 34,822.27 | | |
| As of | 08/23/1999 | | |

Comments

_____

_____

_____

_____



DEFENDANT'S EXHIBIT A-1 COMPOSITE

NAME _Cindy De Frias_

| ORDER DATE | 3-8-93 | CAUSE NO. | |
|---|---|---|---|
| CURRENT | 12 5 WK | WELFARE NO. | |
| ARREARAGE | | AFDC? YES ___ NO ___ | |
| | | EFFECTIVE DATE | |

BALANCE FORWARD AS OF DATE: _____

| DUE DATES | AMOUNT DUE | PAYMENT DATES | TOTAL PAID | ACCUMULATED ARREARAGE |
|---|---|---|---|---|
| 3-15 TO 4-25<br>6 WKS @ 125 | 750 | 3-19 TO 4-21 | 105 | 20283.13<br>+ 645.00<br>20928.13 4/25 |
| 4-26 TO 5-23<br>4 WKS @ 125 | 500 | 4-28 TO 5-19 | 105 | + 395.00<br>21,323.13 5/23 |
| 5-24 TO 7-25<br>9 WKS @ 125 | 1125 | 6-9 TO 7-21 | 150 | + 975.00<br>22298.13 7/25 |
| 7-26 TO 1-23-58<br>26 WKS @ 125 | 3250 | TO 11-7 | 25.00 | + 3225.00<br>25,523.13 1/23 |
| 1-24-98 TO 2-13-58<br>3 WKS @ 125 | 375 | TO | - | + 375.00<br>25898.13 2/13 |
| 2-14-96 TO 12-31-98<br>45 WKS @ 125 | 5,625 | 3/13/98 TO 8/25/98 | 1,724.6 | + 3,900.40<br>29,798.53 5/25 |
| 1-1-99 TO 5-21-99<br>20 WKS @ 125 | 2,500 | 1/5/99 TO 5/24/99 | 225 | + 2275<br>32,073.53 5/2 |
| TO<br>WKS @ | | TO | | |
| TO<br>WKS @ | | TO | | |

```
ASECJK    I013BFF              I S E T S                      PAGE     1
12/08/00   09:32:49          PAYMENT HISTORY
            CAUSE #  07C01-9407-RS-200             CASE #      1099698
            FROM 01/01/1997  TO  12/08/2000        CERTIFIED (Y/N) N
PAYOR   DEFRIES        CINDY       K SSN 317586029  MPI #     786821
PAYEE   DEFRIES        MICHAEL     F SSN            MPI #    1099697
            AMT PD BY PAYOR NOT DIRECTED TO ANY CASE/CAUSE :      0.00
            AMT REMAINING TO BE DISBURSED FROM THIS CASE/CAUSE :  0.00
     DATE       AMOUNT       METHOD          TYPE      CK/RCP #   WORKER
   CHK STATUS CHECK NUMBER  REIS CHK #   DISB DATE    AMOUNT   SUPTYP SUBTYP
   ---------- ------------- ----------- ----------- ------------- ------ ------
   11/29/2000     152.13 CHECK (NO HOLD) MAIL-IN      6893      I013ECS
      OUTS    27667                      11/30/2000    152.13 CHLD CSUP
   11/17/2000     228.97 CHECK (NO HOLD) MAIL-IN      6889      I013ECS
      OUTS    27271                      11/20/2000    228.97 CHLD CSUP
   08/22/2000      75.00 CHECK (NO HOLD) MAIL-IN     352777     I013ECS
      RECN    24329                      08/23/2000     75.00 CHLD CSUP
   08/17/2000     125.00 MONEY ORDER     MAIL-IN   630243746    I013ECS
      RECN    24176                      08/18/2000    125.00 CHLD CSUP
   07/27/2000     236.59 CHECK (NO HOLD) MAIL-IN     145086     I013ECS
      RECN    23463                      07/28/2000    236.59 CHLD CSUP
   07/27/2000     163.20 CHECK (NO HOLD) MAIL-IN     145088     I013ECS
      RECN    23462                      07/28/2000    163.20 CHLD CSUP
   06/15/2000      50.00 MONEY ORDER     MAIL-IN   7386397365   I013ECS
      RECN    22128                      06/16/2000     50.00 CHLD CSUP
   06/01/2000     120.00 MONEY ORDER     MAIL-IN   7386397192   I013ECS
      RECN    21608                      06/02/2000    120.00 CHLD CSUP
   05/01/2000      95.00 MONEY ORDER     MAIL-IN   7385142282   I013ECS
      RECN    20533                      05/03/2000     95.00 CHLD CSUP
   04/17/2000      37.00 MONEY ORDER     MAIL-IN   7385220634   I013ECS
      RECN    20091                      04/18/2000     37.00 CHLD CSUP
   03/23/2000      50.00 MONEY ORDER     MAIL-IN    707323072   I013ECS
      RECN    19291                      03/24/2000     50.00 CHLD CSUP
   03/09/2000      35.00 MONEY ORDER     MAIL-IN    850960337   I013ECS
      RECN    18830                      03/10/2000     35.00 CHLD CSUP
   03/03/2000      40.00 MONEY ORDER     MAIL-IN    SEE BELOW   I013BFF
      RECN    18638                      03/06/2000     40.00 CHLD CSUP
   02/24/2000      30.00 MONEY ORDER     MAIL-IN   7385802808   I013ECS
      RECN    18361                      02/25/2000     30.00 CHLD CSUP
   02/22/2000      50.00 MONEY ORDER     MAIL-IN    50380583    I013ECS
      RECN    18219                      02/23/2000     50.00 CHLD CSUP
   02/18/2000      49.00 MONEY ORDER     MAIL-IN    750380548   I013ECS
      RECN    18178                      02/22/2000     49.00 CHLD CSUP
   02/11/2000      40.00 MONEY ORDER     MAIL-IN   3858026022   I013JAW
      RECN    17935                      02/14/2000     40.00 CHLD CSUP
   02/11/2000      35.00 MONEY ORDER     MAIL-IN   7361071267   I013JAW
      RECN    17934                      02/14/2000     35.00 CHLD CSUP
   01/31/2000      35.00 MONEY ORDER     MAIL-IN   7360234939   I013ECS
      RECN    17518                      02/02/2000     35.00 CHLD CSUP
   01/28/2000      35.00 MONEY ORDER     MAIL-IN    610711340   I013ECS
      RECN    17469                      01/31/2000     35.00 CHLD CSUP
   01/11/2000      35.00 MONEY ORDER     MAIL-IN    602345432   I013ECS
      RECN    16942                      01/12/2000     35.00 CHLD CSUP
   12/21/1999      30.00 MONEY ORDER     MAIL-IN    594073652   I013ECS
      RECN    16304                      12/22/1999     30.00 CHLD CSUP
   12/20/1999      40.00 MONEY ORDER     MAIL-IN    591695694   I013ECS
      RECN    16207                      12/21/1999     40.00 CHLD CSUP
   12/17/1999      45.00 MONEY ORDER     MAIL-IN    591697256   I013EC
      RECN    16071                      12/20/1999     45.00 CHLD CSUP
```

DEFENDANT'S
EXHIBIT
A-2
COMPOSITE

```
ASECJK    I013BFF              I S E T S              PAGE    2
12/08/00   09:32:49         PAYMENT HISTORY
           CAUSE # 07C01-9407-RS-200           CASE #    1099698
           FROM 01/01/1997 TO 12/08/2000       CERTIFIED (Y/N) N
PAYOR   DEFRIES      CINDY      K SSN 317586029  MPI #   786821
PAYEE   DEFRIES      MICHAEL    F SSN            MPI #   1099697
          AMT PD BY PAYOR NOT DIRECTED TO ANY CASE/CAUSE :      0.00
          AMT REMAINING TO BE DISBURSED FROM THIS CASE/CAUSE :  0.00
    DATE      AMOUNT       METHOD       TYPE      CK/RCP #  WORKER
  CHK STATUS CHECK NUMBER REIS CHK #  DISB DATE   AMOUNT   SUPTYP SUBTYP
  ---------- ------------ ----------- ---------- --------- ------ -------
  11/09/1999     35.00 MONEY ORDER   MAIL-IN    828448172 I013JAW
    RECN    14745                    11/10/1999   35.00 CHLD CSUP
  11/09/1999     35.00 MONEY ORDER   MAIL-IN    8311351660 I013JAW
    RECN    14744                    11/10/1999   35.00 CHLD CSUP
  10/19/1999     35.00 MONEY ORDER   MAIL-IN    722291366 I013BFF
    RECN    14060                    10/20/1999   35.00 CHLD CSUP
  10/19/1999    -70.00 ADJUSTMENT                          I013BFF
                                                  -35.00 CHLD CSUP
    RECN    14059                    10/20/1999  -35.00 CHLD CSUP
  10/12/1999     35.00 MONEY ORDER   MAIL-IN    722291290 I013BFF
    VOID    13783                    10/13/1999   35.00 CHLD CSUP
  09/24/1999     35.00 MONEY ORDER   MAIL-IN    7284903291 I013BFF
    RECN    13303                    09/27/1999   35.00 CHLD CSUP
  09/10/1999     50.00 MONEY ORDER   MAIL-IN    707344203 I013ECS
    RECN    12841                    09/13/1999   50.00 CHLD CSUP
  08/31/1999     40.00 MONEY ORDER   MAIL-IN    707343598 I013ECS
    RECN    12568                    09/01/1999   40.00 CHLD CSUP
  08/31/1999     35.00 MONEY ORDER   MAIL-IN    707343587 I013ECS
    RECN    12567                    09/01/1999   35.00 CHLD CSUP
  08/03/1999     40.00 MONEY ORDER   MAIL-IN    831742071 I013BFF
    RECN    11721                    08/04/1999   40.00 CHLD CSUP
  07/27/1999     40.00 MONEY ORDER   MAIL-IN    831741356 I013ECS
    RECN    11513                    07/28/1999   40.00 CHLD CSUP
  07/19/1999     40.00 MONEY ORDER   MAIL-IN    831740465 I013ECS
    RECN    11201                    07/20/1999   40.00 CHLD CSUP
  06/22/1999     40.00 MONEY ORDER   MAIL-IN    09666627  I013BFF
    RECN    10338                    06/23/1999   40.00 CHLD CSUP
  06/02/1999     35.00 MONEY ORDER   MAIL-IN    2309665516 I013ECS
    RECN     9736                    06/03/1999   35.00 CHLD CSUP
  05/24/1999     35.00 MONEY ORDER   MAIL-IN    13724527  I013BFF
    RECN     9414                    05/25/1999   35.00 CHLD CSUP
  05/12/1999     35.00 MONEY ORDER   MAIL-IN    SEE BELOW I013JAW
    RECN     9027                    05/13/1999   35.00 CHLD CSUP
  04/26/1999     25.00 MONEY ORDER   MAIL-IN    C01755037 I013ECS
    RECN     8472                    04/27/1999   25.00 CHLD CSUP
  04/16/1999     35.00 MONEY ORDER   MAIL-IN    778715477 I013ECS
    RECN     8222                    04/19/1999   35.00 CHLD CSUP
  02/22/1999     25.00 MONEY ORDER   MAIL-IN    317531473 I013ECS
    RECN     6497                    02/23/1999   25.00 CHLD CSUP
  02/16/1999     35.00 MONEY ORDER   MAIL-IN    2286932235 I013ECS
    RECN     6284                    02/17/1999   35.00 CHLD CSUP
  01/08/1999     35.00 MONEY ORDER   MAIL-IN    0585513   I013ECS
    RECN     5172                    01/11/1999   35.00 CHLD CSUP
  01/05/1999     35.00 MONEY ORDER   MAIL-IN    779683811 I013ECS
    RECN     5030                    01/06/1999   35.00 CHLD CSUP
  08/25/1998    617.31 CHECK (NO HOLD) WALK-IN  2020      I013ECS
    RECN     1024                    08/26/1998  117.31 CHLD NADCU
    RECN     1024                    08/26/1998  500.00 CHLD CSUP
```

```
ASECJK    I013BFF              I S E T S                    PAGE     3
12/08/00   09:32:49         PAYMENT HISTORY
           CAUSE #  07C01-9407-RS-200              CASE #    1099698
           FROM 01/01/1997  TO  12/08/2000         CERTIFIED (Y/N) N
PAYOR  DEFRIES        CINDY        K SSN 317586029  MPI #    786821
PAYEE  DEFRIES        MICHAEL      F SSN            MPI #    1099697
           AMT PD BY PAYOR NOT DIRECTED TO ANY CASE/CAUSE :      0.00
           AMT REMAINING TO BE DISBURSED FROM THIS CASE/CAUSE :  0.00
    DATE       AMOUNT        METHOD        TYPE      CK/RCP #  WORKER
 CHK STATUS  CHECK NUMBER  REIS CHK #   DISB DATE    AMOUNT    SUPTYP SUBTYP
 ----------  ------------- -----------  ----------  ------------- ------------
 07/30/1998      155.00 CHECK (NO HOLD)  INCOME WITHHOLD 1984       I013ECS
    RECN      222                  07/31/1998      155.00 CHLD CSUP
```

| 06/12/1996 | 06/12/1996 | 66253 | P | O | $20.00 | 0 |
| 06/25/1996 | 06/25/1996 | 66657 | P | O | $25.00 | 0 |
| 07/01/1996 | 07/01/1996 | 66814 | P | O | $20.00 | 0 |
| 08/29/1996 | 08/29/1996 | 68827 | P | O | $30.00 | 0 |
| 09/18/1996 | 09/18/1996 | 69497 | P | O | $35.00 | 0 |
| 09/30/1996 | 09/30/1996 | 69917 | P | O | $30.00 | 0 |
| 12/30/1996 | 12/30/1996 | 72775 | P | O | $35.00 | 0 |
| 01/13/1997 | 01/13/1997 | 73212 | P | O | $35.00 | 0 |
| 01/21/1997 | 01/21/1997 | 73470 | P | O | $35.00 | 0 |
| 01/27/1997 | 01/27/1997 | 73638 | P | O | $35.00 | 0 |
| 02/12/1997 | 02/12/1997 | 74184 | P | O | $30.00 | 0 |
| 03/19/1997 | 03/19/1997 | 75338 | P | O | $35.00 | 0 |
| 04/02/1997 | 04/02/1997 | 75810 | P | O | $35.00 | 0 |
| 04/21/1997 | 04/21/1997 | 76453 | P | O | $35.00 | 0 |
| 04/28/1997 | 04/28/1997 | 76704 | P | O | $35.00 | 0 |
| 05/15/1997 | 05/15/1997 | 77354 | P | O | $35.00 | 0 |
| 05/19/1997 | 05/19/1997 | 77477 | P | O | $35.00 | 0 |
| 06/09/1997 | 06/09/1997 | 78204 | P | O | $20.00 | 0 |
| 06/09/1997 | 06/09/1997 | 78225 | P | O | $25.00 | 0 |
| 06/23/1997 | 06/23/1997 | 78690 | P | O | $35.00 | 0 |
| 07/14/1997 | 07/14/1997 | 79494 | P | O | $35.00 | 0 |
| 07/21/1997 | 07/21/1997 | 79661 | P | O | $35.00 | 0 |
| 11/07/1997 | 11/07/1997 | 83670 | P | O | $25.00 | 0 |
| 03/13/1998 | 03/13/1998 | 88282 | P | O | $932.29 | 0 |
| 05/21/1998 | 05/21/1998 | 91022 | P | O | $20.00 | 0 |

**Check Total:**                                                                    **$2,557.29**

**CARD NUMBER        2**

| Business Date | Check Date | Check Number | Record Type | Route | Amount | Replace Number |
|---|---|---|---|---|---|---|
| 03/25/1996 | 03/25/1996 | 63524 | P | O | $3,353.33 | 0 |

**Check Total:**                                                                    **$3,353.33**
**Check Grand Total:**                                                               **$5,950.62**

| Record Type: | P = Payment Record | Route Code: P = Payee/Misc. Payments |
|---|---|---|
| | V = Voided Record | S = State Payments |
| | C = Changed Record | C = County Payments |
| | R = Replacement Record | U = URESA |

**CAUSE NUMBER**    07C019407RS0200                          **IV-D NUMBER**

**PAYEE**                                                    **PAYOR**
MICHAEL F. DEFRIES                                           DEFRIES, CINDY K.
5200 NORTH FEDERAL HWY APT #2                                P.O. BOX 1531
FORT LAUDERDALE, FL  33308                                   NASHVILLE, INDIANA 47448
915634                                                       DOB  03-29-51

### CARD NUMBER    0

| Business Date | Check Date | Check Number | Record Type | Route | Amount | Replace Number |
|---|---|---|---|---|---|---|
| 03/19/1997 | 03/19/1997 | 0 | P | C | $20.00 | 0 |
| 03/19/1997 | 03/19/1997 | 0 | P | C | $20.00 | 0 |

**Check Total:**                                                                   **$40.00**

### CARD NUMBER    1

| Business Date | Check Date | Check Number | Record Type | Route | Amount | Replace Number |
|---|---|---|---|---|---|---|
| 04/12/1994 | 04/12/1995 | 52500 | P | O | $40.00 | 0 |
| 04/12/1994 | 04/12/1995 | 52500 | V | O | ($40.00) | 0 |
| 04/12/1995 | 04/12/1995 | 52522 | P | O | $40.00 | 0 |
| 04/17/1995 | 04/17/1995 | 52686 | P | O | $35.00 | 0 |
| 04/21/1995 | 04/21/1995 | 52797 | P | O | $35.00 | 0 |
| 04/28/1995 | 04/28/1995 | 53020 | P | O | $40.00 | 0 |
| 05/15/1995 | 05/12/1995 | 53499 | P | O | $35.00 | 0 |
| 05/17/1995 | 05/17/1995 | 53654 | P | O | $25.00 | 0 |
| 05/26/1995 | 05/25/1995 | 53895 | P | O | $35.00 | 0 |
| 06/07/1995 | 06/06/1995 | 54273 | P | O | $30.00 | 0 |
| 09/15/1995 | 09/15/1995 | 57416 | P | O | $35.00 | 0 |
| 10/02/1995 | 09/29/1995 | 57856 | P | O | $35.00 | 0 |
| 10/03/1995 | 10/02/1995 | 57949 | P | O | $35.00 | 0 |
| 10/06/1995 | 10/06/1995 | 58103 | P | O | $35.00 | 0 |
| 10/16/1995 | 10/16/1995 | 58441 | P | O | $35.00 | 0 |
| 10/24/1995 | 10/24/1995 | 58684 | P | O | $30.00 | 0 |
| 11/14/1995 | 11/14/1995 | 59371 | P | O | $50.00 | 0 |
| 11/29/1995 | 11/29/1995 | 59840 | P | O | $35.00 | 0 |
| 12/05/1995 | 12/05/1995 | 60061 | P | O | $35.00 | 0 |
| 12/08/1995 | 12/08/1995 | 60179 | P | O | $35.00 | 0 |
| 01/10/1996 | 01/10/1996 | 61126 | P | O | $25.00 | 0 |
| 01/16/1996 | 01/16/1996 | 61336 | P | O | $25.00 | 0 |
| 01/24/1996 | 01/24/1996 | 61600 | P | O | $35.00 | 0 |
| 02/20/1996 | 02/20/1996 | 62486 | P | O | $30.00 | 0 |
| 03/01/1996 | 03/01/1996 | 62811 | P | O | $30.00 | 0 |
| 03/08/1996 | 03/08/1996 | 63041 | P | O | $30.00 | 0 |
| 05/08/1996 | 05/08/1996 | 65057 | P | O | $20.00 | 0 |
| 05/20/1996 | 05/20/1996 | 65508 | P | O | $20.00 | 0 |
| 06/03/1996 | 06/03/1996 | 65878 | P | O | $20.00 | 0 |
| 06/05/1996 | 06/05/1996 | 65992 | P | O | $20.00 | 0 |

Record Type:        P = Payment Record          Route Code: P = Payee/Misc. Payments
V = Voided Record                   S = State Payments
C = Changed Record                  C = County Payments
R = Replacement Record              U = URESA

352777

**OFFICIAL CHECK**    Fifth Third Bank, Indiana
(Central)

| KIND OF PAYMENT | CASH ☐ | | DATE August 16, 2000 |
| | CHECK ☐ | ON _____ | |

PAY TO THE
ORDER OF ___ **Clerk of Brown County** ___ $$675.00******

NOTICE - The purchase of a Surety Bond may be required before any Official Check on this bank will be replaced or refunded in the event it is lost, misplaced, or stolen.

**75 000000**

DRAWN BY FIFTH THIRD BANK KENTUCKY, INC.

PURCHASED BY **Something Old-Something New**

NON-NEGOTIABLE

6550
COST CENTER

CUSTOMER COPY

---

**REMITTER'S RECEIPT**
DRAFT OR CASHIER'S CHECK                      145088

**TERRE HAUTE FIRST
NATIONAL BANK**
TERRE HAUTE, INDIANA 47808
PLAZA NORTH BRANCH                    71-35/749-1

REMITTER    **Cindy K. DeFries**

DATE 07 26 00

PAYABLE TO    NON - NEGOTIABLE    ***163.20
Brown County Clerk

DRAWN ON    CASHIER'S CHECK    PAYABLE TO THE PURCHASER
THIS IS YOUR RECEIPT RETAIN IT
FOR FUTURE REFERENCE

⑆074900356⑆    23  1660  9

---

**REMITTER'S RECEIPT**
DRAFT OR CASHIER'S CHECK                      145086

**TERRE HAUTE FIRST
NATIONAL BANK**
TERRE HAUTE, INDIANA 47808
PLAZA NORTH BRANCH                    71-35/749-1

REMITTER    **Cindy K. DeFries**

DATE 07 26 00

PAYABLE TO    NON - NEGOTIABLE    ***236.59
Brown County Clerk

DRAWN ON    CASHIER'S CHECK    PAYABLE TO THE PURCHASER
THIS IS YOUR RECEIPT RETAIN IT
FOR FUTURE REFERENCE

⑆074900356⑆    23  1660  9

TOTAL 474.79



**CUSTOMER'S RECEIPT** DO NOT SEND THIS RECEIPT FOR PAYMENT
KEEP IT FOR YOUR RECORDS

84750380548  000216  474480  **49*00

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |

PAY TO *Brown Co Clerk*
ADDRESS *Brown Co Courthouse*
*Nashville, Ken 47448*
COD NO. OR USED FOR *Child Support*

CHECKWRITER IMPRINT AREA
FROM *CINDY DeFRIES*
ADDRESS *242 N. Tuckaway Rd*
*Nashville, In 47448*

This receipt is your guarantee for a refund of your money order if it is lost or stolen, provided you fill in the Pay To and From information on the money order in the space provided. No claim for improper payment permitted 2 years after payment. If your money order is lost or stolen, present this receipt and file a claim for a refund at your Post Office.

An inquiry Form 6401 may be filed at any time for a fee. A replacement will not be issued until 60 days after the money order purchase date, provided the money order has not been paid.

**CUSTOMER'S RECEIPT** DO NOT SEND THIS RECEIPT FOR PAYMENT
KEEP IT FOR YOUR RECORDS

84750380583  000216  474480  **50*00

| SERIAL NUMBER | YEAR, MONTH, DAY | POST OFFICE | U.S. DOLLARS AND CENTS |

PAY TO *Brown Co Clerk*
ADDRESS
COD NO. OR USED FOR

CHECKWRITER IMPRINT AREA
FROM
ADDRESS

This receipt is your guarantee for a refund of your money order if it is lost or stolen, provided you fill in the Pay To and From information on the money order in the space provided. No claim for improper payment permitted 2 years after payment. If your money order is lost or stolen, present this receipt and file a claim for a refund at your Post Office.

An inquiry Form 6401 may be filed at any time for a fee. A replacement will not be issued until 60 days after the money order purchase date, provided the money order has not been paid.

TOTAL 124.00



# IMPERIAL POINT MEDICAL CENTER

### FORT LAUDERDALE, FLORIDA

**NAME** DARDEEN, CINDY          **DATE** 3-10-84     **RM.** 409-1     **DR.** HUTSON

Diagnosis:  Head Trauma
Fresh Hemorrhage, dense in left lobe
Superficial lacerations (15) above right eye
Brain Edema in subdural space

JS/lp
5-6-84
5-15-84

J. Serrano, M.D.

DEFENDANT'S
EXHIBIT

B

## DISCHARGE SUMMARY

PATIENT ___DARDEN, Cindy_____     DATE ADMITTED ____3-9-84___

SOCIAL SECURITY No. _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____     DATE DISCHARGED ___3-15-84___

PHYSICIAN _J. Serrano, M.D.____

Remarks:  Patient had been home in unconscious state for 2 days prior to admittance.

Injuries appear to be result of battering.  Patient is evasive when questioned regarding whereabouts of boyfriend, Michael DeFries.

Abrasions and lacerations of forehead appear to be have inflicted by hand, a ring, eg., physical force.

Opinion:  These injuries are result of physical abuse, inflicted by another individual.  Considering patient is in latter trimester of pregnancy, this matter is of a serious nature.  Will follow up in office and/or patient's residence to clarify events when she is more cognizant.

JS/lp
5-6-84
5-16-84

CHARGE SUMMARY

## DISCHARGE SUMMARY

PATIENT ___DARDEEN, Cindy___          DATE ADMITTED ___3-9-84___

SOCIAL SECURITY No. ___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___     DATE DISCHARGED ___3-15-84___

                                      PHYSICIAN ___J. Serrano, M.D.___

Patient came to emergency room who claims that she fell two days prior
to admission, hitting her head against a plate glass, has headache,
dizziness and memory loss.  Patient claims she has lost memory. She
was five months pregnant at the time of admission.  There were no
abdominal injuries; no vaginal bleeding or abdominal discomfort. There
are bilateral periorbital contusions, edema, ecchymosis.  The abdomen
was soft, non-tender with viable fetal heart tones by auscultation.
There was no intravaginal bleeding.  Patient was placed on seizure
check.  Skull x-ray was normal.  CT scan of the brain shows collection
of blood in the intrahemispheric fissure.  SMA 6 was normal, CBC was
normal.  CBC shows mild anemia, hypochromic anemia and 3+ bacteria in
the urine.  She was treated with Phenobarb and Tylenol on observation
and was finally discharged home in improved condition to be followed
in the office.

FINAL DIAGNOSIS:  Cerebral contusion and concussion.
                  Possible cortical vein laceration.
                  Post traumatic headache secondary to #1 and #2.

JS/kd #2
5-4-84 d
5-15-84 t

# IMPERIAL POINT MEDICAL CENTER

### FORT LAUDERDALE, FLORIDA

**NAME**    DARDEEN, CINDY    DATE 3-12-84    RM 409-1    DR HUTSON

REPORT OF RADIOLOGICAL CONSULTATION

317 58 6029

CT BRAIN SCAN WITHOUT CONTRAST:

History:  32 year old female with trauma to the forehead.
Patient has dizziness and headaches with some memory loss.
Please rule out cerebral contusion.

 Procedure:  5 mm. cuts of the posterior fossa and 1 cm.
cuts of the supratentorium were obtained without contrast.
The abdomen was shielded.

Findings:  On cuts #10 through 15 there is rather prominent thickening
and increased density in the intrahemispheric fissure.  I believe
that this represents some blood within the intrahemispheric fissure.
This appears to thick to simply be normal falx and there does not
appear to be calcification on the plain film of the skull in the
region of the falx.  A depressed skull fracture is not identified.
Pneumocephalus is not seen.  Mass effect or midline shift is not
identified.  Subdural collection is not identified.  The ventricular
systems and sulci appear within normal limits.

IMPRESSION:

Increased density and widening of the intrahemispheric fissure
felt secondary to blood in the intrahemispheric fissure.
Blood in the suprasellar cistern or a subdural collection
along the lateral margins of the cranium are not seen.


Nicholas M. Antaras, M.D.
bc
3-12-84

**IMPERIAL POINT MEDICAL CENTER**
**ELECTROENCEPHALOGRAPHIC REPORT**                    409

| NAME AND ADDRESS OF PATIENT | AGE | RECORDING DATE | RECORD NUMBER | REFERRING PHYSICIAN |
|---|---|---|---|---|
| DARLEEN, Cindy K. | 32 | 3/12/84 | 4059 | Dr. Hutson |

**REPORT:** Conditions of Recording: This is performed on a 32 year old female, who was reportedly awake but drowsy at times during the recording.

Background Rhythms: Consist predominantly of 8 wave per second rhythmic alpha range activity with amplitudes up to 45 uV seen only briefly during this recording, during brief periods of apparent wakefulness; these activities are seen symmetrically when they occur. This record is dominated by normal drowsy patterns with theta range activity in the 5-7 wave per second range with amplitudes up to 60 uV, seen diffusely over both hemispheres, and some intermixed slower activity again was seen symmetrically. Throughout the recording there are no epileptiform discharges noted. There also is no significant asymmetries evident throughout the recording. Photic stimulation induced no significant change aside from some arou

**EEG DIAGNOSIS:** Impression: EEG is within normal limits for condition of recording which is predominantly a drowsy or light sleep. There are no focal abnormalities or epileptiform features evid

**CLINICAL INTERPRETATION:**

TCH/jc
3/12/84 d
3/13/84 t



Thomas C. Ham

# Brown County Democrat.

Copyright 2000 Heartland Communications, Inc.

**DECEMBER 27, 2000**

**NASHVILLE, INDIANA • 75 CENTS**

138TH YEAR • NO. 52 • 3 SECTIONS

# Jury finds woman 'deadbeat' mom

While a Brown County mother is facing jail time for not paying child support, her ex-husband says their 16-year-old daughter is ambivalent about the jury's decision.

"I still see the pain because her mother's not in her life," said Michael DeFries about his daughter, Shannon.

"I can see emotional scars there, (but) all I can do is love her."

Although Cindy DeFries's attorney doesn't think she'll go to jail, her ex-husband is certain she will.

"She'll probably go to prison because she has a couple of other convictions," said Mr. DeFries.

"As much as I dislike her, I don't wish that on anyone, especially the mother of my child."

A jury found Mrs. DeFries, of "Tuck A Way Ridge, guilty under the "deadbeat dad" law. She was the first woman in South Florida's federal court convicted of this crime, according to her attorney, Bob Miller, of Bloomington.

The United States Child Support Recovery Act makes it illegal to dodge child-support payments, and since Ms. DeFries owes more than $40,000, her criminal case was tried in federal court.

Mr. Miller said Ms. DeFries was acquitted on one count, stemming from 1993 to 1998, but convicted of the second count, which covered 1998 and 1999.

"It is highly unlikely she will go to jail," Mr. Miller said, expecting sentencing in the next 60 days.

"I believe (the three-day trial) was useless and a waste of taxpayer money. It was just a sickening thing the whole thing," he chuckled. "I'm really frustrated by one.

"Clearly if the point is to get her to pay child support payments, they're not going to get her to pay if she's sitting in a jail cell."

Ms. DeFries was ordered November 28, 1994, in Brown Circuit Court to pay $125 per week in child support.

"She's never had the ability to pay that much," said Mr. Miller.

He continued that based upon her earnings history, Ms. DeFries should only have to pay $50 to $60 per week.

"It's probably the most bizarre criminal case I've ever defended — and in federal court," he chuckled.

Ms. DeFries now owes more than $40,000 to her ex-husband, who lives in Fort Lauderdale, Florida, with their daughter.

"I'm so sick of hearing about deadbeat dads . . . I think about all the sacrifices I've made to raise my daughter in a good Catholic home. . . and the best thing I could give her

was my time," said Mr. DeFries, who said he doesn't believe the struggle for child support will ever be over.

"I hope (Ms. DeFries) comes out of this and realizes you've just got to take care of your kids. You took the responsibility to have them, you have to take care of them."

Mr. DeFries said if his ex-wife does pay her overdue child support, then he can give Shannon things other teenagers have and not have to see the sadness in her eyes.

Over the years, "she's worried about having the money to pay rent . . . that's something she shouldn't have to deal with," said Mr.

DeFries.

"I'd like to see Ms. DeFries turn around and . . . will her daughter respect back," he said.

If this ex-wife does go to prison, he said, "It will be very hurtful for my daughter . . . but Cindy did it to herself."

Mr. Miller said Ms. DeFries's family offered to pay $10,000 toward the arrears if the charges were dropped, but the prosecutor denied the offer.

"Though Mr. Miller wondered why the federal prosecutor chose to enforce the law and continue with the trial, both he and Mr. DeFri

**(See 'SUPPORT' back page)**





# Petition drive underway for remonstrance

The county is headed for a month-long remonstrance vote over the planned new jail starting sometime in January.

Forces opposing the project officially filed petitions calling for the remonstrance vote with the county

rent high school ball diamond property," the petition read.

Twenty-eight different petitions were filed, carry names ranging in number from one to 31.

Petition carriers included Douglas Stoufer. Deborah

*Brown County Democrat 2001 Calendar*

DEFENDANT'S
EXHIBIT

C



**Wednesday, December 27, 2000**

MOCRAT

# SUPPORT

**(Continued from front page)**

said the ex-husband did not pursue the case into federal court.

About the prosecutor's decision, Donetta Dorsett, Brown County child support administrator, said, "When all else you try fails, you go to criminal court and that's what Florida chose to do."

Mrs. Dorsett, who says the case was active prior to her employment in the prosecutor's office, testified in the case against Ms. DeFries in Florida.

In 1996, Mr. DeFries made a written plea to Judge Heather Mollo to dismiss his ex-wife's motion for modification and reduction of the support, "so that my daughter and I may be spared a further litigious future that robs us of the necessities we were promised in the decree of divorce and the subsequent child support order."

Mr. DeFries claimed that the "real loser is my daughter."

Through the years, several measures were taken by the courts to compensate for the child support owed.

In 1997, the Brown County Sheriff's Department seized about $7,000 worth of merchandise from Ms. DeFries's floral and craft business, according to court paperwork.

—Linda Margison



**DEVENING BLOCK INC.**

Kenlite Blocks
Concrete Blocks

Concrete Products
Other Allied
Materials

895 Jonesville Rd.    P.O. Box 566
812-372-4450    Columbus, IN 47201

# New Years Recycling Hours

Central Recycling Center • Outdoor Bins & Office



**BROWN CO. PROSECUTOR'S OFFICE**
**P.O. BOX 1008**
**NASHVILLE, IN 47448-1008**
**(812) 988-5470**

Date: 03/17/2001

CINDY K. DEFRIES                              Other Parent Name:
242 N TUCKAWAY RIDGE NORTH                    MICHAEL F. DEFRIES
NASHVILLE, IN 47448

Re: Cause Number: 07C01-9407-RS-200

## NOTICE OF RIGHT TO REQUEST REVIEW OF CHILD SUPPORT ORDER

You are hereby notified that, pursuant to and in accordance with 42 U.S.C.A. section 666(a)(10) and 45 CFR section 303.8, you may request a review of your Indiana child support order under the above referenced cause number. The purpose of the review, if conducted, will be to determine whether, under the Indiana Child Support Rules and Guidelines, an increase or decrease of current support is warranted in the existing court order. The review will also determine if, as mandated by federal and state law, the order contains a provision for health insurance coverage for your child(ren). If a review is requested and the necessary documentation provided, the review procedure will be conducted by the Title IV-D child support office. All requests for review must be made in writing to the child support office listed above on this notice and you must include the following information:

1. Your current residential address and phone number.

2. Your current employer and the address and phone number of employer.

3. Documentation of all wages earned and any income received in the last six (6) months with the understanding that upon receipt of your written request, the prosecutor's office may request your production of additional financial documentation including but not limited to previously filed federal and state tax return, bank account statements, income from real or personal property, ownership or interest in stocks, bonds, or a business venture, and copies of any current health and/or hospitalization policies with a summary of benefits provided by your employer or the insurance carrier.

4. Any verifiable information available to you concerning the income of the other party to the order.

5. A brief and concise statement expressing your reasons to believe that a modification of the order is warranted.

Please note that if there has been any review or modification of a support order issued by an Indiana court within the last twelve (12) months, either through the efforts of the child support office or by way of a court determination, the above listed title IV-D child support office may not be obligated to conduct a review.

CAS000038

